IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN WILLAMAN, | ) | CASE NO. 5:12-CV-180 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 12). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying John Willaman's application for a Period of Disability and Disability Insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and therefore, conclusive.

For the reasons set forth below, the undersigned AFFIRMS the decision of the Commissioner.

I. PROCEDURAL HISTORY

On September 27, 2007, Plaintiff John Willaman ("Plaintiff" or "Willaman") protectively applied for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits. (Tr. 81, 177-80, 184-86). Plaintiff originally alleged he became disabled on June 15, 1996, but later amended his onset date to September 27, 2007.[1] (Tr. 205, 47-48).

---

[1] The amendment effectively eliminated Willaman's claim for Disability Insurance benefits. (Tr. 47).

Willaman alleged he was disabled due to suffering from bipolar disorder, seizures, seasonal allergies, irritable bowel syndrome and depression. (Tr. 205). The Social Security Administration denied Willaman's applications initially and upon reconsideration. (Tr. 110-21). Thereafter, Plaintiff requested a hearing before an administrative law judge to contest the denial of his applications. (Tr. 122-23). The administration granted Willaman's request and scheduled a hearing. (Tr. 126-29, 141-45).

On May 13, 2010, Administrative Law Judge William Manico (the "ALJ") convened a hearing via video to evaluate Plaintiff's applications. (Tr. 38-61). The ALJ presided over the hearing from Falls Church, Virginia, while Plaintiff, counsel, and a vocational expert appeared in Cleveland, Ohio. (Tr. 38, 40). During the proceeding, the ALJ heard testimony from Plaintiff and the vocational expert. (Tr. 38-61).

On June 25, 2010, the ALJ issued an unfavorable decision finding Willaman was not disabled. (Tr. 24-33). The ALJ applied the five-step sequential analysis,[2] and concluded

---

[2] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability". *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

    (1)    If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

    (2)    If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

    (3)    If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

    (4)    If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

Plaintiff retained the ability to perform work which existed in significant numbers in the national economy.  (*Id*.).  Following the issuance of this decision, Willaman sought review of the ALJ's decision from the Appeals Council.  (Tr. 7).  However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3).

II.  PERSONAL BACKGROUND INFORMATION & PERTINENT MEDICAL HISTORY

Willaman was born on October 17, 1968.  (Tr. 81).  Accordingly, at the time of the hearing, he was considered as a "younger person" for Social Security purposes.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).  Plaintiff graduated from high school and has taken some college courses.  (Tr. 46, 57).  Although Willaman has held jobs in the past, none of this employment rose to the level of past relevant work as defined by Social Security terms.  (Tr. 47); *see* 20 C.F.R. §§ 404.1565, 416.965.  Plaintiff has served a total of roughly 15 to 20 years in prison for writing bad checks, receiving stolen property and other crimes of dishonesty.  (Tr. 30, 43-45).

Willaman's current appeal centers on the ALJ's evaluation of his problems with seizures.  After being released from prison in September 2007, Willaman presented to the Canton Community Clinic for medical attention on October 1, 2007. (Tr. 337-38).  He informed doctors there that he was being treated by a different physician for seizures. (Tr. 337).   On   February 19, 2008, Plaintiff presented to Dr. Leon Rosenberg for a neurological examination regarding the possibility of beginning vagus nerve stimulator ("VNS") treatment and for control of epilepsy.  (Tr. 474-75).  Plaintiff described his history of seizures to the doctor and the effects the seizures

---

(5)    Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

3

caused. (Tr. 474). Plaintiff claimed to experience two seizures each month on average. (*Id*.). Willaman indicated that he currently was taking Depakote and Lamictal to control his seizures. (*Id*.). After assessing Plaintiff, Dr. Rosenberg recommended that Plaintiff undergo an EEG and MRI of his brain prior to considering VNS treatment. (Tr. 475).

In March 2008, Willaman underwent the procedures recommended by Dr. Rosenberg. (Tr. 473). Plaintiff's EEG results were normal, but the MRI "showed a couple of areas of small hyperintense signal, which [we]re nonspecific." (*Id*.). The physician noted Plaintiff had continued to experience intermittent seizures and slightly increased his prescription for Depakote. (*Id*.). Dr. Rosenberg also referred Plaintiff for placement of the VNS device, which was completed on May 23, 2008. (*Id*., Tr. 570-71). During Willaman's follow-up visit on July 10, 2008, he reported suffering two to three seizures, but otherwise was fully functional. (Tr. 427). At that time, Dr. Rosenberg diagnosed Plaintiff with "Epilepsy, intractable". (*Id*.). In addition, the physician made an adjustment to Plaintiff's VNS signal due to Plaintiff's concerns regarding coughing and choking. (*Id*.).

Between October 2008 and May 2009, Plaintiff reported an increase in the frequency of his seizures. (Tr. 421-22, 417-18). He reported experiencing between two and six seizures each month. (*Id.*). In January 2009, Willaman requested an upward adjustment in his VNS signal, and Dr. Rosenberg so adjusted the device. (Tr. 421).

In October 2009, Dr. Rosenberg drafted a letter on Willaman's behalf indicating that Willaman continued to suffer from petit mal seizures despite the use of a VNS and medication to control this condition. (Tr. 511). The physician also noted that Plaintiff used a service dog to assist with seizure control. (*Id*.). In conclusion, Dr. Rosenberg expressed his belief that Plaintiff was unable to work indefinitely. (*Id*.).

4

III.  ALJ's RULING

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 1998.

2. The claimant has not engaged in substantial gainful activity since June 15, 1996, the alleged onset date.

3. The claimant has the following severe impairments: Seizures and [an] Affective disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the undersigned further finds that claimant can perform only unskilled work.  Furthermore, claimant is limited to never climbing ropes, scaffolds, and he cannot use any hazardous machinery.

6. The claimant has no past relevant work.

7. The claimant was born on October 17, 1968 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 1996, through the date of this decision.

(Tr. 26-32) (internal citations omitted).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales,* 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)*.*  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*.  Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)*.*  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387*.*  However, it may examine all the evidence

6

in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI. ANALYSIS

Plaintiff attacks the ALJ's decision on two fronts. First, Willaman contends the ALJ improperly assessed his credibility. Second, Willaman maintains that remand is proper because the ALJ's decision was based upon an incomplete record. Neither of Plaintiff's objections is well-taken.

### 1. Plaintiff's Credibility

This circuit follows a two-part test in evaluating a claimant's subjective allegations regarding disabling symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ must determine whether there is objective medical evidence showing the existence of an underlying medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). Second, if the ALJ finds that an underlying impairment exists, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). In evaluating the claimant's symptoms, the ALJ should consider the individual's daily activities, the location, duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms, other treatment taken, and any other measures used to relieve the claimant's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *Felisky,* 35 F.3d at 1039-40.

Because the ALJ has the opportunity to observe the claimant's demeanor during the hearing process, he is best equipped to evaluate the witness' credibility. *Rogers v. Comm'r of Soc. Sec.* 486 F.3d 234, 247-48 (6th Cir. 2007). Yet, the ALJ is not permitted to make credibility determinations based upon "intangible or intuitive notion[s]" about the individual. *Id.* Instead, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *Cunningham v. Astrue*, 360 F. App'x 606, 613 (6th Cir. 2010).

In this case, the ALJ found that Plaintiff's epilepsy could reasonably be expected to cause his symptoms, but the ALJ ruled that Plaintiff's statements regarding the intensity, persistence and limiting effects of his seizures were not entirely credible. (Tr. 30). Willaman argues that the ALJ's credibility finding was based on several inaccurate factors.

First, Plaintiff claims that the ALJ discredited him simply based on the duration and nature of his criminal history. This allegation has no merit. Although the ALJ made brief mention of Plaintiff's 20 year history of incarceration for various crimes, at no point did the ALJ intimate that Plaintiff's criminal history *alone* was determinative of his creditworthiness. In fact, despite Plaintiff's checkered past, the ALJ's decision focused on the other evidence in the record and contained very little reference to Plaintiff's past convictions.

Next, Willaman argues that the ALJ mischaracterized his claim for benefits. Plaintiff maintains that the ALJ inaccurately stated, "[the] claimant alleges that he did not develop epilepsy till [sic] he was released from prison, and filed for disability the day after his release." (Tr. 30; Pl.'s Br. at 8). Plaintiff takes issue with this statement due to the ALJ's insinuation that

8

Plaintiff did not develop this ailment until after his release from prison. During the hearing, Plaintiff testified that he had experienced seizures all his life, including while he was incarcerated. (Tr. 53-54). Plaintiff further claimed that he was prescribed seizure medication while he was in jail. (Tr. 54). But, Plaintiff admitted that he was not diagnosed with epilepsy until after his release from prison in 2007. (*Id.*). Thus, the ALJ's statement that Plaintiff "did not develop epilepsy [until] he was released from prison" was not necessarily a mischaracterization of the evidence or detrimental to Plaintiff's claim. Regardless of when Plaintiff began to have seizures, the first diagnosis of the condition did not appear in the record until after he was released from prison. Plaintiff has not identified an earlier diagnosis in the record.

Nor is there any cause for remand based upon the ALJ's description of Plaintiff's mode of transportation. Willaman claims that the ALJ erroneously reported that he "traveled by car either driving or riding". (Tr. 26; Pl.'s Br. at 8). But, Willaman failed to explain how this statement was misleading. Presumably, Plaintiff takes issue with this statement because at the hearing he testified that he was unable to drive. (Tr. 49). To the extent that Plaintiff challenges the ALJ's credibility finding on this ground, it is overruled. The Court notes that the ALJ made this statement during his discussion of Plaintiff's severe impairments, not in relation to whether Plaintiff's allegations were credible. Additionally, a complete reading of that section of the ALJ's decision demonstrates that the ALJ's intent was to highlight that Plaintiff was still able to engage in a range of activities despite his impairments, and that Plaintiff was able to travel by car, public transportation, or walking. (*See* Tr. 26-27). Therefore, even if true, Willaman's inability to drive would not have affected the ALJ's finding at step two regarding Plaintiff's severe impairments, or the ALJ's credibility finding.

Finally, Plaintiff suggests it was improper for the ALJ to discredit the disabling nature of his seizures simply because they were petit mal seizures rather than grand mal seizures. However, Plaintiff did not cite any case law illustrating that this was an improper factor for the ALJ to consider.  Regardless, though this was one of the many factors the ALJ considered, it was not the only factor contemplated by the ALJ in weighing Plaintiff's credibility.  The ALJ also noted that Plaintiff had reported to his physician that his typical seizures only involved getting cramps in his legs or arms, or getting lockjaw.  (Tr. 414).  Additionally, the ALJ highlighted that the CT scan of Plaintiff's brain was normal and that the MRI taken of Plaintiff's brain showed no recent or acute infarction, nor was there any lesion detected.  (Tr. 569, 507).  Furthermore, the ALJ explained that though Dr. Rosenberg had opined that Willaman was unable to work – a finding which was not entitled to any deference – the doctor did not list the work-prohibitive aspects of Plaintiff's seizures which made it impossible for him to work.  On the other hand, the ALJ noted that the state agency physician who reviewed Plaintiff's medical record indicated that Willaman was not restricted by any exertional limitations.  (Tr. 362).  Instead, the state agency physician concluded that Plaintiff's seizures were adequately controlled with medication and that Plaintiff should simply avoid working around heights, dangerous machinery or commercial driving.  (Tr. 363, 365).  These reasons adequately support the ALJ's decision to discredit Plaintiff's allegations regarding the frequency and severity of his seizures.

Though Plaintiff attacks the ALJ's failure to address his use of VNS therapy and the assistance of a seizure therapy dog, the ALJ was under no obligation to address this evidence in his written decision.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).  It is well-established that an ALJ can consider the entire record without directly

10

addressing every piece of evidence therein. *Id*. Here, there is no doubt that the ALJ was aware of and considered Plaintiff's use of VNS therapy and a seizure therapy dog, as both were discussed at length during the hearing. In addition, though Willaman identified several medical records which he claims bolsters the credibility of his statements regarding the frequency and disabling nature of his seizures, most of these records merely reflect statements Plaintiff made to his doctors regarding his condition rather than independent findings by the doctors. Accordingly, these records do not provide independent support for Plaintiff's assertions. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (ALJ may reject treating physician's opinion when based on claimant's self-reports which ALJ determines are incredible).

2. Incomplete Record

Next, Plaintiff alleges that remand is proper because the ALJ's decision was based upon an incomplete record. Plaintiff claims the record was incomplete because it did not contain his medical records from prison. Relying upon *Deskin v. Commissioner of Social Security*, 605 F. Supp. 2d 908 (N.D.Ohio 2008), Willaman contends the ALJ should have either recontacted his treating physician, ordered him to undergo a consultative examination, or secured a medical expert to testify at the hearing, in order to supplement the record.

Willaman's reliance on *Deskin* is misplaced. In that case, remand was proper because the ALJ assessed Deskin's RFC largely based on his own analysis of the medical records. *Deskin*, 605 F. Supp. 2d at 910-11. Although Deskin's treatment was well-documented, none of her treating physicians had provided a medical opinion regarding her ability to perform work-related tasks. *Id*. at 910. The court held that the ALJ was not qualified to interpret raw medical data and should have recontacted Deskin's treating source, ordered a consultative examination, or had a medical expert testify at the hearing in order to determine Deskin's functional limitations. *Id*.

11

at 912.  The court further explained that although a state agency physician had assessed Deskin's functional limitations, there were two years of relevant medical records which post-dated the physician's opinion, and moreover, the ALJ had failed to even incorporate all of the restrictions announced by the state agency physician.  *Id.* at 912-13.

Here, unlike in *Deskin*, the ALJ did not interpret raw medical data.  Instead, the ALJ's decision was based on his review of all the medical opinion evidence, particularly the opinions of the two state agency physicians who reviewed Willaman's records and opined regarding his functional limitations.  The ALJ assigned significant weight to their opinions and fully incorporated their findings into his RFC assessment.  Thus, because the ALJ's opinion was not based upon his own assessment of the raw medical findings in the record, the ALJ would not have been obligated to further develop the record as was required in *Deskin*.  Nevertheless, Plaintiff claims the ALJ had a duty to secure his medical records from the Department of Corrections and to contact Dr. Rosenberg to seek clarification of his medical findings.  Yet, the Court finds the ALJ was not obligated to take either of these steps.

Though the ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing" and to "fully develop the record", only under special circumstances – such as when the claimant is unrepresented by counsel—will the ALJ have a heightened duty to develop the record.  *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983); *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003).  Although there is no bright line test to determine when an ALJ has failed to fairly and fully develop the record, *Lashley*, 708 F.2d at 1052, the undersigned is satisfied with the ALJ's actions in this case.  Notably, Willaman was represented by counsel.  Furthermore, during the hearing, Plaintiff's counsel did not indicate that he had any objection to the ALJ's admittance of the

12

exhibits in Willaman's file. (Tr. 58). Nor did counsel otherwise alert the ALJ that there were medical records missing from the record which could have shed light on Plaintiff's disability claim. Absent such indication from Plaintiff or counsel, it was reasonable for the ALJ to presume that the record before him was complete. *See Elam v. Astrue*, No. 3:11CV234, 2012 WL 2409218, at *8 (S.D.Ohio June 26, 2012) ("a claimant represented by counsel is presumed to have made his best case before the ALJ…") (quoting *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007)), *R&R adopted*, 2012 WL 4483422 (S.D.Ohio Sept. 27, 2012); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002).

Nor did the ALJ have an independent duty to recontact Dr. Rosenberg. Social Security Ruling 96-5p states the circumstances under which an ALJ must recontact a claimant's treating source. SSR 96-5p, 1996 WL 374183, at *6 (1996). Two conditions must be met in order to trigger the duty. First, the evidence must not support the treating source's opinion. Second, the ALJ must be unable to ascertain the basis of the physician's opinion from the record. *Id.*; *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 (6th Cir. 2010).

In this case, it appears that Dr. Rosenberg's opinion was based at least in part, on the self-reported history and subjective complaints of Plaintiff, as reflected in the doctor's treatment notes. But, the ALJ found that the objective evidence did not support Plaintiff's subjective allegations. Although the ALJ did not expressly conclude so, it would have been reasonable for him to discount Dr. Rosenberg's opinion not because the basis of his opinion was unclear, but because it was based on Plaintiff's subjective statements. *See Ferguson*, 628 F.3d at 273-75. Accordingly, the duty to contact Dr. Rosenberg would not have been triggered in this case. *See id.* at 275 ("An ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as

13

here, the ALJ rejects the limitations recommended by that physician.") (quoting *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156, n. 3 (6th Cir. 2009)).

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date:  March 7, 2013.